UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THEODORE BROWN,  :<br>    :<br>          Petitioner,  :<br>    :<br>     v.  :<br>    :<br>GRONDOLSKY et al.,  :<br>    :<br>          Respondents.  :<br>    : | Civil Action No. 09-3290 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

      This matter comes before the Court upon submission of an application, filed pursuant to 28 U.S.C. § 2241, by Petitioner Theodore Brown, an inmate confined at the F.C.I. Fort Dix.  It appears that:

1. On July 7, 2009, the Clerk received Petitioner's instant application.  See Docket Entry No. 1.  The application did not include either the requisite fee of $5.00 or an in forma pauperis application.  See id.  Moreover, Petitioner's instant application appears to be a pre-printed form, compare, e.g., Cooper v. Grondolsky ("Cooper"), 09-2970 (JBS) (D.N.J.), Docket Entry No. 1 (replicating an identical § 2241 petition, different from that at bar only in the name of petitioner who filled the blank spaces left for the litigant's name and the like).  The pre-printed form appears to be based upon the basis of this Court's decision in Strong v. Schultz, 599 F. Supp. 2d 556.  See the within complaint and Cooper complaint, Docket Entries Nos. 1, at 1 (both stating that

the Bureau of Prisons ("BOP") "is deliberately acting with reckless disregard for Judge Bumb's ruling in Strong v. Schultz , supra.

2. Petitioner is challenging the delay in his pre-release custody placement in a residential re-entry center, also known as a community corrections center ("CCC") under the Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 (effective Apr. 9, 2008) (which was codified at 18 U.S.C. §§ 3621, 3624, and increased the maximum possible duration – without affecting the minimum duration – of pre-release placement in CCCs from six to 12 months, and required the BOP to make an individual determination that the placement is of sufficient duration to provide the greatest likelihood of successful reintegration into the community"). See Docket Entry No. 1, at 2-3 (where Petitioner erroneously claimed that, in Strong, this Court ruled that a full 12-month CCC placement is congressionally mandated and exhaustion of administrative remedies is not required with regard to the Second Chance Act claims).

3. Petitioner maintains that, in his case, exhaustion is unavailable and would be futile because: (a) the warden did not consider his CCC placement prior to the final 12-month period of his sentence (which began sometimes in July of 2009); (b) the warden told Petitioner that the warden was not required to comply with the holding of Strong. See id. at 2-4.

4. Although the exhaustion requirement is not jurisdictional but that of prudence of comity, the requirement is diligently enforced by the federal courts. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760-62 (3d Cir. 1996) (noting that "a procedural default in the administrative process bars judicial review because the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar"); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("we have consistently applied an exhaustion requirement to claims brought under § 2241"). In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 U.S. Dist. LEXIS 54310, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. See 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where she is confined. See id. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. See id. at §§ 542.15(a) and 542.18. No

administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office.  See Sharpe v. Costello, 289 Fed. App'x 475 (3d Cir. 2008).

5.  It is true that, in certain narrow circumstances, the exhaustion requirement is excused, and such exceptions were made even in the matters setting forth the Second Chance Act challenges.  For instance, this Court recently excused exhaustion in Strong v. Schultz, 599 F. Supp. 2d 556.  However, the circumstances presented in Strong were vastly different from those in the case at bar.  As this Court noted in Strong,

> The BOP acknowledges that Strong pursued all three steps of the Administrative Remedy Program, with the final decision on May 19, 2008, by Harrell Watts of the Central Office.  Respondents contend, however, that the Petition should nevertheless be dismissed as unexhausted because Petitioner did not exhaust administrative remedies a second time [around]. This Court notes that Strong is currently scheduled to be placed in a CCC for the final six months of his sentence . . . . Given that it took five months to exhaust administrative remedies the first time around, dismissal of the Petition as unexhausted would effectively moot Petitioner's § 2241 claim through no fault of his own.

Id.  (citation omitted, emphasis supplied).

6. Here, in contrast, Petitioner unambiguously indicates that he never attempted to exhaust his administrative remedies.  See Docket Entry No. 1, at 2-3.   Therefore,

unlike in Strong, the Court cannot find that Petitioner's exhaustion of administrative remedies would be futile.[1]

7. Reflecting on the interplay between the Second Chance Act and the exhaustion requirement, this Court finds persuasive the rationale of another court, which observed as follows:

> [The petitioner] argues that exhausting his administrative remedies would be futile because he is not challenging the BOP's application of its regulation to him, but the regulation itself. . . . The "futility" exception which [the petitioner] invokes applies in certain narrowly-defined circumstances, such as where there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." Colton v. Ashcroft, 299 F. Supp. 2d 681, 689-90 (E.D.Ky. 2004) (citing James v. United States Dept. of Health and Human Services, 824 F.2d 1132, 1139 (D.C.Cir.1987). While this argument holds more superficial appeal, the regulation at issue is comparatively new, as is the BOP's enforcement of it, and there is simply not yet a sufficiently-established record of the BOP's enforcement policies regarding the issue. The Court is not yet prepared to conclusively hold that the BOP's position on the matter is fixed and inflexible. The Court therefore holds that [the petitioner] has failed to provide a legally-sufficient justification for his failure to exhaust administrative remedies, and the petition must be denied as prematurely brought.

---

[1] Indeed, even if this Court were to take, as true, Petitioner's claim that the warden refused to entertain his applications prior to the last twelve months of Petitioner's confinement, the Petition in no way indicates that the warden's decision to postpone consideration of Petitioner CCC placement was appealed by Petitioner to either the Regional Office or to the Central Office of the BOP; therefore, even if Petitioner's allegations are true, the Court cannot bind the entire BOP by the alleged warden's statement.

<u>Johnson v. Hogsten</u>, 2009 U.S. Dist. LEXIS 32085, at *5-6 (E.D. Ky. Apr. 15, 2009) (emphasis supplied).  This Court agrees.  While Petitioner invites this Court to reach a conclusion that no exhaustion of administrative remedies is required for any litigant raising a § 2241 challenge on the grounds of the Second Chance Act, this Court declines to do so and finds that such holding would fly in the face of the Third Circuit's teaching -- as to the firmness of the exhaustion requirement -- articulated in <u>Callwood v. Enos</u>, 230 F.3d at 634, and <u>Moscato</u>, 98 F.3d at 760-62.

8.  The "revised [Habeas] Rule 3(b) requires the [C]lerk to file a petition, even though it may otherwise fail to comply with [Habeas] Rule 2.  The [R]ule . . . is not limited to those instances where the petition is defective only in form; the [C]lerk [is] also required . . . to file the petition even though it lack[s] the required filing fee or an <u>in forma pauperis</u> form."  28 U.S.C. § 2254, Rule 3, Advisory Committee Notes, 2004 Am.  However, Section 1914, the filing fee statute, provides in relevant part that "the clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $350 except that on application for a writ of habeas corpus the filing fee shall be $ 5."  28 U.S.C. § 1914(a).  The accompanying provision, Section 1915, governs applications filed <u>in forma pauperis</u> and provides, in relevant part, that leave to proceed <u>in forma pauperis</u> may be granted

in any suit to a litigant "who submits an affidavit that includes a statement of all assets such [litigant] possesses [if such affidavit demonstrates] that the [litigant] is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1); see also Smith v. Bennett, 365 U.S. 708, 712 (1961) ("[W]hile [$ 5.00] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$ 500]"); Clay v. New York Nat'l Bank, 2001 U.S. Dist. LEXIS 3209, at *1 (S.D.N.Y. Mar. 21, 2001). Therefore, regardless of the outcome of this matter, Petitioner is obligated to submit either his filing fee of $5.00 or his certified affidavit of poverty qualifying him for in forma pauperis status. Cf. Kemp v. Harvey, 2006 U.S. Dist. LEXIS 8939, at 18 n.6 (D.N.J. Mar. 3, 2006) (observing that "it would be indeed anomalous to allow persons [stating no cognizable claim] to usurp judicial resources and bring claims without payments while obligating every litigant [stating a cognizable claim] to pay the fee").

IT IS, therefore, on this **31st** day of **August** 2009,

**ORDERED** that the Petition is dismissed, without prejudice, for failure to exhaust Petitioner's administrative remedies; and it is further

**ORDERED** that Petitioner must submit his filing fee of $5.00 or his in forma pauperis application within thirty days from the date of entry of this Order;

**ORDERED** that the Clerk shall serve a copy of this Memorandum Opinion & Order upon Petitioner, by regular U.S. mail, together with a blank in forma pauperis application form for habeas litigants; and it is finally

**ORDERED** that the Clerk shall close the file in this matter.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE