UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THEODORE BROWN, | : |
| Petitioner, | : Civil Action No. 09-3290 (RMB) |
| v. | : **MEMORANDUM OPINION & ORDER** |
| GRONDOLSKY et al., | : |
| Respondents. | : |

This matter comes before the Court upon Petitioner's motion for reconsideration, see Docket Entry No. 4, and it appearing that:

1. On July 7, 2009, the Clerk received Petitioner's § 2241 application. See Docket Entry No. 1. The application arrived unaccompanied by either Petitioner's fee of $5.00 or by his in forma pauperis application.[1] See id. In his application, Petitioner challenged the delay in his pre-release custody placement in a residential re-entry center (also known as a community corrections center ("CCC")) under the Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 (effective Apr. 9, 2008). Petitioner maintained that administrative exhaustion of his claims was futile because: (a) the warden did not consider his CCC placement prior to the final 12-month period of his sentence (which began

---

[1] Moreover, Petitioner's § 2241 application was a pre-printed form, apparently circulated in the F.C.I. Fort Dix, Petitioner's place of confinement; the form was, apparently, composed on the basis of this Court's decision in Strong v. Schultz, 599 F. Supp. 2d 556, and utilized by the prison population en masse, with full disregard to either the holding or the rationale of Strong v. Schultz or to the individual circumstances of the prisoners using the form: it merely left space for a handful of entries while making boilerplate substantive allegations. See Docket Entry No. 3 (detailing the problems with the form).

      sometimes in July of 2009); (b) the warden, allegedly, informed Petitioner of the warden's intent not to comply with the holding of Strong v. Schultz.[2] See id. at 2-4.

2. Two weeks later, Petitioner filed an identical application in Brown v. Grondolsky, 09-3598 (RBK), which Judge Kugler dismissed on July 30, 2009, as duplicative.

3. On August 31, 2009, this Court dismissed the Petition filed in this matter. See Docket Entry No. 3. In no ambiguous terms, the Court clarified to Petitioner that his Petition was dismissed, without prejudice, for failure to exhaust administrative remedies (which was especially appropriate in light of Petitioner's own admission that he never even attempted such exhaustion). See id. at 2-6. In addition, the Court directed Petitioner to either submit his filing fee of $ 5.00 or to file his in forma pauperis application. See id. at 6-7 (explaining to Petitioner Habeas Rules, pursuant to which a habeas petition is deemed filed upon receipt but such filing, nonetheless, does not excuse the litigant from paying his filing fee or duly obtaining in forma pauperis status).

4. On October 1, 2009, Petitioner submitted his filing fee of $5.00. Together with his filing fee, Petitioner submitted the motion at hand. See Docket Entry No. 4 (as well as the preceding non-numerical docket entry reflecting the Clerk's receipt of the filing fee).

5. In his motion, Petitioner sought reconsideration of this Court's order which had dismissed the Petition without prejudice, as unexhausted. See id. However, for the reasons not entirely clear to this Court, Petitioner's motion:

---

[2] The petition was wholly silent as to the circumstances of the warden's alleged refusal to consider Petitioner for a CCC placement until the last 12-month period of Petitioner's confinement begun to run, as well as to the circumstances of the warden's alleged statement with regard to the holding of Strong v. Schultz.

    a.      asserted that the Court had dismissed the Petition because Petitioner failed to prepay his filing fee or to submit his in forma pauperis application together with his Petition;[3]

    b.      claimed that this Court should have considered (or, perhaps, should consider now) an in forma pauperis "application," which Petitioner attached to his instant motion for reconsideration. That "application," in turn, is nothing but a print out copy of a mailing made by the Clerk to Petitioner (reflecting the Clerk's docket entry of Petitioner's submission of an in forma pauperis application in Brown v. USA, 09-3934 (RBK));

    c.      also claimed that this Court should have considered (or, perhaps, should consider now) an in forma pauperis application attached to another civil rights complaint;[4] and

    d.      finally, maintained that this Court should re-consider Petitioner's failure to exhaust his administrative remedies in light of previously not raised allegations, specifically:

        (i)      allegations stated in another complaint ; and

---

[3] This point is bewildering in light of the fact that the Court's order dismissing the Petition unambiguously stated that Petition was dismissed for failure to exhaust administrative remedies and not that dismissal was related to Petitioner's failure to submit his filing fee or his in forma pauperis application.  See Docket Entry No. 3.

[4] It appears that Petitioner might be referring to the very same filing he made in Brown v. USA, 09-3934 (RBK).  In that matter, Petitioner -- upon administrative termination of that action by Judge Kugler on the grounds of Petitioner's failure to submit his filing fee or his in forma pauperis ("IFP") application -- filed his IFP forms; however, the sufficiency of Petitioner's IFP application has not been addressed by Judge Kugler as of the time of this Court's issuance of this Memorandum Opinion and Order.

    (ii)    allegations stated in two other actions (filed, allegedly, on September 14, 2009) by two persons other than Petitioner,

simply because all those allegations were, allegedly, made against the Respondents named in this matter and, also allegedly, asserted "obstruction of mandatory exhaustion standard" in Petitioner's place of confinement.[5]

See Docket Entry No. 4.

6.    There are four basic grounds upon which a motion for reconsideration may be granted: (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly-discovered or previously unavailable evidence; (c) to prevent manifest injustice; and (d) to accord the decision to an intervening change in prevailing law. See 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986)(purpose of motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence). "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp, 996 F. Supp. 409, 442 (D.N.J. 1998). However, mere disagreement with the district court's decision is inappropriate on a motion for reconsideration, and should be raised through the appellate process. Id. (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485

---

[5] Although the Court is not entirely certain as to the meaning of the phrase "obstruction of mandatory exhaustion standard," the Court presumes that Petitioner alleges that the process of exhaustion at his place of confinement is unduly complicated by prison officials.

(3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)). "The Court will only entertain such a motion where the overlooked matters, if considered by the Court, might reasonably have resulted in a different conclusion." Assisted Living, 996 F. Supp. at 442.

7. Here, Petitioner's motion does not state any basis for reconsideration of this Court's prior decision. Indeed, Petitioner cannot "borrow" allegations stated in another matter that Petitioner filed *eighteen days after* this Court dismissed his Petition. Moreover, Petitioner cannot "borrow" allegations stated in other litigants' actions, especially, if these actions were also initiated after the Court dismissed Petitioner's Petition.[6] In addition, even if this Court were to hypothesize that -- for the reasons this Court fails to fancy -- Petitioner could not, with due diligence, determine this information about unspecified "obstacles" until *after* the Court dismissed his Petition, Petitioner's hypothetical ignorance as to these "obstacles" cannot excuse Petitioner failure to even attempt administrative resolution: indeed, if Petitioner was actually unaware of these "obstacles," he had no reason to avoid administrative exhaustion.[7] Finally, Petitioner's assertion that this Court should reconsider its prior determination on the grounds of Petitioner's reference to the in forma pauperis application filed in another matter does not provide the Court with a valid basis for

---

[6] Furthermore, Petitioner's claim (raised in his motion) that the exhaustion process had always been obstructed by his warden cannot, by definition, qualify as "newly-discovered or previously unavailable evidence."

[7] For instance, if this Court were to hypothesize that the warden "obstructed" administrative exhaustion by not responding to inmate grievances, 28 C.F.R. § 542.18 provides a remedy to such "obstruction" by clarifying that, if a prisoner does not receive a response from the BOP officials within the time allotted for such response, "the inmate may consider the absence of a response to be a denial at that level": this regulation qualifies the inmate for appeal to the next level of the BOP and, thus, opens the path to complete exhaustion of administrative remedies.

reconsideration: it is so because the Petition, ab initio, was *not* dismissed on this ground and, hence, this ground cannot be reconsidered. See Docket Entry No. 3.[8] Therefore, Petitioner's motion for reconsideration will be denied.

8.  Petitioner's request to grant him, post factum, in forma pauperis status will also be denied[9] for the following two reasons.

    a.  First, it was Petitioner's choice to pay his filing fee of $ 5.00 rather than to submit his in forma pauperis application (even though the Court expressly directed the Clerk to serve Petitioner with a blank in forma pauperis form together with a copy of the Court's order dismissing his Petition): had Petitioner wished to obtain in forma pauperis status for the purposes of this matter, he was free to do so instead of submitting his filing fee. The Court is not aware of any legal provision or case law allowing a litigant (or a court) to change his/its mind as to the litigant's IFP status without being presented with evidence verifying a change in the litigant's

---

[8] The Court already explained to Petitioner the bases for assessment of the filing fee or the need for Petitioner's submission of his IFP application. See Docket Entry No. 2, at 6-7 (discussing applicable Rules). Petitioner's initiation of this matter imposed financial obligations upon Petitioner. See Hairston v. Gronolsky, 2009 WL 3303712 (3rd Cir. Oct. 15, 2009) (clarifying that the litigant's "legal obligation to pay the filing fee [is automatically] incurred by the initiation of the action itself") (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999)).

[9] The Court presumes that Petitioner seeks in forma pauperis status in order to get his $ 5.00 filing fee remitted to him. The Court stresses that it does *not* consider the amount of $ 5.00 a "trivial sum" for the purposes of the matter at hand; indeed, the Court is mindful of the Supreme Court's observation that, "while [$5] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$500]." Smith v. Bennett, 365 U.S. 708, 712 (1961). Hence, even though Petitioner's prison account statement filed in Brown v. USA, 09-3934 (RBK), shows fluctuation between $ 23.96 balance and $ 137.13 balance (with the closing balance of $ 93.60), the Court recognizes that the amount of $ 5.00 might, nonetheless, be anything but "trivial" to Petitioner.

circumstances. Here, Petitioner's circumstances did not change between his submission of his filing fee and his request for in forma pauperis status: the docket unambiguously verifies that both submissions arrived the very same day.

b.  However, being mindful of harsh prison realities, the Court would still consider Petitioner's request for IFP status had Petitioner submitted an *actual* in forma pauperis application rather than a mere reference to his filing made in Brown v. USA, 09-3934 (RBK). Such reference is not just insufficient within the meaning of the IFP statute: it violates the core concept of judicial comity. Indeed, it would be improper for this Court to rule on sufficiency of Petitioner's in forma pauperis application filed in another matter, where the presiding judge, i.e., Judge Kugler, has not yet made a determination as to this issue. For instance, it would be wholly anomalous for this Court to find Petitioner's in forma pauperis application sufficient (or insufficient) for the purposes of this action and risk the possibility that Judge Kugler might conclude otherwise for the purposes of Brown v. USA, 09-3934 (RBK),[10] which is entirely feasible because among other things, a complete in forma pauperis application must contain a *signed certification* from an authorized officer of the correctional facility where Petitioner is presently confined, see 28 U.S.C. § 1915(a)(2); accord Local Civil Rule 81.2(b) (detailing the requirements applicable to habeas petitions), and Petitioner's in forma pauperis application submitted for Judge Kugler's review is *missing* such signed certification.

---

[10] The Court also notes, in passing, that the in forma pauperis requirements for the purposes of a habeas action (as it is the case with this matter) and a civil action (as it is the case with Petitioner's action pending before Judge Kugler) do differ, although marginally.

IT IS, therefore, on this **5th** day of **November 2009**,

**ORDERED** that the Clerk shall reopen this matter for the purposes of this Court's examination of Petitioner's motion for reconsideration, Docket Entry No. 4, by making a new and separate entry on the docket reading "CIVIL CASE REOPENED"; and it is further

**ORDERED** that Petitioner's motion for reconsideration, Docket Entry No. 4, is denied; and it is further

**ORDERED** that the Petition will remain dismissed, without prejudice, for failure to exhaust Petitioner's administrative remedies; and it is further

**ORDERED** that Petitioner's request to proceed in this matter in forma pauperis (and what appears to be Petitioner's implied request to have his filing fee of $ 5.00 remitted to him) is denied; and it is further

**ORDERED** that the Clerk shall serve a copy of this Memorandum Opinion & Order upon Petitioner, by regular U.S. mail; and it is finally

**ORDERED** that the Clerk shall close the file in this matter by making a new and separate entry on the docket reading "CIVIL CASE CLOSED."

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**